# IN THE COURT OF APPEALS OF IOWA

No. 17-0712
Filed March 21, 2018

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**NICHOLAS HODGES,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer (motion to suppress) and Jeffrey A. Neary (trial and sentencing), Judges.

　　　　Nicholas Hodges appeals his drug-offense convictions. **AFFIRMED.**

　　　　Rees Conrad Douglas, Sioux City, for appellant.

　　　　Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

　　　　Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**DOYLE, Presiding Judge.**

Nicholas Hodges appeals his convictions for possession with intent to deliver (marijuana), in violation of Iowa Code section 124.401(1)(d) (2016), and failure to affix a drug tax stamp, in violation of section 453B.12, both class "D" felonies. On appeal, Hodges argues the district court erred in overruling his motion to suppress. He claims his arrest by a Plymouth County deputy sheriff in Woodbury County was an unlawful extraterritorial arrest and, therefore, any evidence derived as a result of the traffic stop should have been suppressed. Under the facts presented, we conclude the deputy had authority to stop the truck in which Hodges was a passenger, and to arrest Hodges. We affirm the district court.

**I. Factual Background and Proceedings.** On July 30, 2016, Plymouth County Deputy Sheriff Jake Wingert observed a pickup truck traveling northbound on Frelon Drive in Plymouth County. As the truck passed by, the deputy noticed two male occupants and took note of the license plate number. As the deputy ran the plate in his computer, he observed the truck turn onto Highway 75 and begin traveling south towards Sioux City into Woodbury County. After running the plate information into the computer system, the deputy received information indicating that the owner (a male) had a suspended Iowa driver's license. The deputy followed the truck while waiting for the information from the computer, and after receiving the suspended-license information, the deputy pursued the truck because, he testified, he believed that the registered owner could be the driver.

Deputy Wingert made contact with Woodbury County Deputy Nate Sands. Deputy Wingert communicated to Deputy Sands that he was in pursuit of a vehicle

traveling southbound on Highway 75 that he believed was driven by the owner, who had a suspended license. Deputy Sands informed Deputy Wingert that he was out of position but to go ahead and stop the vehicle and Deputy Sanders would join as soon as he was able to get to the location.

A short time later, Deputy Wingert initiated a traffic stop on the Highway 75 exit onto Gordon Drive in Sioux City. Deputy Wingert reported:

> I approached the driver's side window of the vehicle and spoke to the occupants. Prior to doing that, I did watch the front passenger in the truck appear to be reaching down and either grabbing or moving something. While speaking to the individuals at the window of the vehicle, I immediately detected the heavy odor of marijuana. They informed me that the registered owner of the vehicle was currently not with them and they had borrowed his vehicle. . . . The driver . . . was identified . . . [and] I took him back to my patrol vehicle and had him have a seat in the front passenger's area. I then reported to the passenger's seat area and asked the passenger to get out. The passenger was identified as Nicholas Ray Hodges. He did not currently have an ID with him. I spoke to him for a short time in reference to the odor of marijuana and he informed me while speaking to him that it was in the middle console area of the vehicle and that he was the owner of it. He was asked to sit against the front bumper of my patrol vehicle. A short time later, I was joined by Deputy Sands from Woodbury County and also Sgt. Bauerly from Woodbury County.
>
> While at my patrol vehicle, I spoke with the driver of the vehicle and he informed me that any marijuana in the vehicle was not his and claimed he did not know of it. He also was unable to provide insurance for the vehicle. Deputy Sands spoke to the individual at the front of my patrol vehicle for a short time and came back to my window and informed me that he was just going to retrieve the marijuana from the vehicle, as the driver told him there was approximately three ounces of marijuana. Deputy Sands then retrieved a bag of marijuana that was stuffed between the passenger's seat and the middle seat area on the floor. Deputy Sands informed me that this marijuana was in closest proximity to the passenger who had claimed ownership of it and had identified the approximate weight to him. When Deputy Sands presented me with the marijuana, it was in a bag approximately the size of my hand. The marijuana was very tightly compressed and appeared to have recently been cut off a larger brick of marijuana. Deputy Sands also looked through the vehicle and was unable to find any other drug

paraphernalia or smoking devices. The driver of the vehicle was released with a verbal warning for not having current insurance and was allowed to leave the scene. The passenger, Nicholas Ray Hodges, was transported to the Plymouth County Jail. . . .

While on the scene prior to getting in my vehicle, Mr. Hodges was read his *Miranda* rights. He was seated in the rear of my patrol vehicle prior to being transported to the Plymouth County Jail. Upon arrival to the jail, he was placed in the jail's custody. The marijuana confiscated was found to weigh approximately 100 grams. Nicholas Hodges was charged with possession of a controlled substance marijuana with intent to deliver and failure to affix a drug tax stamp.

Prosecution of the offenses was initiated in Plymouth County. Hodges filed a motion for change of venue. The district court found the Plymouth County deputy observed the truck in which Hodges was a passenger when it entered Plymouth County from Woodbury County, was in Plymouth County "briefly by a few hundred yards," and "then proceed to turn onto Highway 75 to go south back into Woodbury County." The Plymouth County deputy followed the truck into Woodbury County for several miles before stopping it. The district court granted the motion, concluding that "a dominant portion of the elements in this case occurred in Woodbury County." *See* Iowa Code § 803.3(1) (stating that where an offense occurs in two or more counties, prosecution for the offense may be had in any county where an element of the offense occurred, but in cases where a dominant number of the elements occur in one county, the primary right to prosecution shall be in that county). Specifically, the court found,

[Hodges] is a resident of Woodbury County, the traffic stop and discovery of the marijuana occurred in Woodbury County, and [Hodges's] only contact with Plymouth County was approximately a minute or less while the car he was a passenger in briefly entered into Plymouth County from Woodbury County for the sole purpose of entering a state highway to return into Woodbury County.

Venue was transferred to Woodbury County.

Hodges filed a motion to suppress all evidence against him, claiming Plymouth County Deputy Wingert had no authority to arrest Hodges in Woodbury County and therefore Hodges's extraterritorial arrest was illegal. The State resisted. The district court concluded Deputy Wingert had the authority to lawfully stop and subsequently arrest Hodges.

Hodges waived his right to a jury trial, and the matter was tried on the minutes of evidence and police reports attached thereto. The district court found Hodges guilty as charged and sentenced Hodges to an indeterminate term of incarceration not to exceed five years on each count, to be run concurrently. Hodges now appeals.

**II. Discussion.** On appeal, Hodges argues the district court erred in overruling his motion to suppress. He claims his arrest by a Plymouth County deputy sheriff in Woodbury County was an unlawful extraterritorial arrest and, therefore, any evidence derived as a result of the traffic stop should have been suppressed. He notes his motion to suppress focused on Iowa law; neither the Federal nor Iowa Constitution was invoked. "We review for correction of errors at law a district court's ruling on a motion to suppress based on the interpretation of a statute." *State v. Lukins*, 846 N.W.2d 902, 905 (Iowa 2014); *see also State v. Lamoreux*, 875 N.W.2d 172, 176 (Iowa 2016); *State v. Palmer,* 554 N.W.2d 859, 864 (Iowa 1996). "We will affirm the district court's ruling on a motion to suppress if 'the court correctly applied the law and substantial evidence supports the court's fact-finding.'" *Lamoreux*, 875 N.W.2d at 176 (citation omitted).

The parties agree the general rule is that the authority of a peace officer does not extend beyond the peace officer's jurisdiction unless there is a statute

broadening the officer's authority. *See State v. Snider*, 522 N.W.2d 815, 817 (Iowa 1994) ("Generally, a governing body like a municipality can directly exercise its police powers only within its jurisdictional boundaries unless a statute broadens those powers."). The district court relied on Iowa Code sections 321.485 and 801.4, as well as Iowa caselaw, in reaching its conclusion that Deputy Wingert had the authority to stop and subsequently arrest Hodges.

It is well established in Iowa jurisprudence that when a peace officer observes a traffic offense, no matter how minor, petty, or trivial, the officer has probable cause and reasonable suspicion to stop the driver of the vehicle. *See State v. Harrison*, 846 N.W.2d 362, 365 (Iowa 2014); *State v. Flippo*, No. 16-0721, 2017 WL 5185408, at *3 n.4 (Iowa Ct. App. Nov. 8, 2017) (collecting cases). It is a simple misdemeanor for one to drive while his or her driver's license is under suspension. *See* Iowa Code § 321.218(1).[1] Whenever a peace officer has reasonable cause to believe that a person has violated any provision of Iowa Code chapter 321 punishable as a simple, serious, or aggravated misdemeanor, the officer may immediately arrest the person or may issue a citation or memorandum. *See* Iowa Code § 321.485. "[W]ith state traffic offenses, a municipal police officer has authority to arrest anywhere in the state, if the officer has a reasonable belief that the person committed such a traffic offense." *Snider*, 522 N.W.2d at 817.[2] A "peace officer" includes sheriffs and their regular deputies. *See* Iowa Code

---

[1] It is a serious misdemeanor to operate a commercial vehicle if a person is disqualified from operating a commercial vehicle. Iowa Code § 321.218(4).

[2] *Snider* involved an Atalissa city police officer who observed a speeding violation outside Atalissa's city limits. 522 N.W.2d at 816. The officer followed the car, pulled it over, and issued Snider a speeding ticket and arrested him for operating while intoxicated (OWI). *Id.* The supreme court held that the officer had statutory authority to arrest Snider for the speeding violation and for OWI, and to invoke implied-consent procedures. *Id.* at 817.

§ 801.4(11)(a).  There is no dispute that Deputy Wingert was a regular deputy.

Additionally, with regard to chapter 321, "'peace officer' means every officer

authorized to direct or regulate traffic or to make arrests for violations of traffic

regulations in addition to the meaning in section 801.4"  Iowa Code § 321.1(50).

Based on the above, there can be no genuine dispute that Deputy Wingert had

authority to stop the truck—in Plymouth County or Woodbury County— if he had

reasonable cause to believe the driver of the truck was driving while under

suspension.

We next move to the question of whether Deputy Wingert had the authority

to arrest Hodges for the drug offenses.  A peace officer may make a warrantless

arrest "[f]or a public offense committed or attempted in the peace officer's

presence."  Iowa Code § 804.7(1).  Again, the general rule is that the authority of

a peace officer does not extend beyond the peace officer's jurisdiction unless there

is a statute broadening the officer's authority.  *See Snider*, 522 N.W.2d at 817.

Section 804.7(1) is silent as to an officer's extraterritorial jurisdiction and does not

specifically broaden an officer's authority beyond the officer's jurisdiction.

Seemingly, this would end our inquiry, but the traffic laws analyzed in *Snider* also

lack any language broadening an officer's jurisdictional authority.  Nevertheless,

our supreme court held, "[W]ith state traffic offenses, a municipal police officer has

authority to arrest anywhere in the state, if the officer has a reasonable belief that

the person committed such a traffic offense."  *Id.*[3]  The statutory scheme here

parallels the statutory scheme analyzed in *Snider*.  *See id.*

---

[3] Hodges criticizes *Snider* as being flawed and asks that the supreme court reconsider the case's continuing viability.  The supreme court did not retain the appeal and transferred it

Not only do the laws analyzed in *Snider* and this case parallel each other, the facts also parallel each other. The officer in *Snider* did not have a reasonable belief that Snider was operating while intoxicated until after he stopped Snider's car for speeding; it was only after the stop that he smelled the odor of an alcoholic beverage on Snider's breath. *Id*. at 816. The officer did not form his reasonable belief concerning the OWI offense until he was outside his jurisdiction. *Id.* The *Snider* court held the officer had the authority to arrest Snider for OWI and invoke implied-consent procedures. *Id*. at 817.

Here, Deputy Wingert did not have a reasonable belief Hodges possessed drugs until after he stopped the truck to check the license status of the driver. It was only after the stop that he smelled the odor of marijuana wafting from the truck. Like the officer in *Snider*, the deputy did not form his reasonable belief concerning the drug offense until after he was outside his jurisdiction.

Applying the rationale of *Snider*, we conclude Deputy Wingert had authority to arrest Hodges for the drug offenses. But, even if *Snider* is flawed, or its application here is flawed, the actions of Deputy Wingert would have been permissible as a citizen's arrest under Iowa Code section 804.9(1). *See State* v. *Lloyd,* 513 N.W.2d 742, 744 (Iowa 1994) ("An arrest by out-of-state officers is valid as a citizen's arrest under section 804.9(1) if made for a public offense committed in the officers' presence."); *State v. O'Kelly*, 211 N.W.2d 589, 595 (Iowa 1973), *cert. denied*, 417 U.S. 936 (1974). In *Lloyd*, a North Sioux City, South Dakota

---

to this court. As an intermediate court of appeals, we are not at liberty to overrule controlling supreme court precedent. *See State v. Hastings,* 466 N.W.2d 697, 700 (Iowa Ct. App. 1990).

police officer attempted to stop Lloyd in South Dakota because Lloyd's truck lacked lighted taillights. 513 N.W.2d at 742. Lloyd failed to stop and drove across the state line into Iowa. *Id.* at 742-43. The officer finally pulled Lloyd over in Sioux City. *Id.* at 743. The officer gave Lloyd a warning ticket for the taillight violation and also cited him for an expired license plate—both low-class misdemeanors under South Dakota law. *Id.* Lloyd looked drunk, so the officer called in a Sioux City police officer. *Id.* The Iowa officer charged Lloyd with OWI. *Id.* The supreme court concluded, the South Dakota officer "could have made a valid citizen's arrest for Lloyd's failure to have lighted taillights and for his expired registration." *Id.* at 744. Notably, the supreme court stated, "More important, after the stop of Lloyd's vehicle, [the officer] could have taken Lloyd into custody on the basis of his belief that Lloyd was operating his truck while intoxicated." *Id.* It was not until after the traffic stop that the officer formed a reasonable belief that Lloyd was driving drunk, much like the circumstances here.

**III. Conclusion.** We conclude that Deputy Wingert's stop of the truck and subsequent arrest of Hodges for the drug offenses in Woodbury County was lawful. The district court therefore did not err in overruling Hodges's motion to suppress. We therefore affirm his drug-offense convictions.

**AFFIRMED.**