# IN THE COURT OF APPEALS OF IOWA

No. 22-0895
Filed July 26, 2023

**CHARLES ALLEN RICHARDS,**
   Plaintiff-Appellant,

**vs.**

**CITY OF WEST DES MOINES, WEST DES MOINES POLICE OFFICER 231, CITY OF ANKENY, ANKENY POLICE OFFICER 87, and ANKENY POLICE OFFICER 115,**
   Defendants-Appellees.
_____

   Appeal from the Iowa District Court for Polk County, Samantha Gronewald,

Judge.


   A pro se plaintiff appeals from a summary judgment ruling in favor of various

police defendants. **AFFIRMED.**


   Charles Allen Richards, Boone, self-represented appellant.

   Jason C. Palmer of Lamson Dugan & Murray, LLP, West Des Moines, for

appellees.


   Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

A pro se plaintiff, Charles Allen Richards, appeals from a ruling granting summary judgment to municipal police officers, their employing agencies, and their parent municipalities (who we collectively refer to as "police defendants"). Richards makes multiple tort claims, with varying degrees of clarity, asserting the police defendants acted unlawfully when they arrested him for harassing a former coworker. None of Richards's claims establish reversible error, and we affirm.

### I.      Background Facts and Proceedings

Richards worked with a young woman named S.S. at a company in West Des Moines. Richards engaged in bizarre and unwelcome behavior toward S.S., such as repeatedly asking her to go to lunch with him alone. In Richards's words, he "wanted to get to know her" and he "ha[d] reasons for wanting to have a discussion that was just within the context of herself and me." Richards later disclosed that he believed he met S.S. about a decade before working with her, while she was a child, and he believed S.S. was involved—as a victim or otherwise—in a nationwide cabal of human traffickers. Richards also believed that another of his and S.S.'s coworkers was involved in this same cabal and claimed this coworker attempted to recruit or entice Richards into unlawful conduct.

Richards's workplace advances toward S.S. eventually became so uncomfortable that she asked the company to ensure a coworker was present any time Richards spoke with her. The company found Richards's behavior so concerning that new safety measures were implemented at the office, including an armed security guard.

The company eventually fired Richards, but he continued to contact S.S. through various social media accounts. When Richards confronted another former coworker at a gas station and aggressively pressured the coworker to give him S.S.'s address and phone number, S.S. reported the incident to the West Des Moines Police Department, and Officer Barry Graham told Richards to stop contacting S.S. In his interview of S.S., Officer Graham observed that she "appeared genuinely afraid that [Richards] was trying to get her address."

Days later, Richards contacted S.S.'s younger sister by email. Richards claimed that S.S. was under "duress or stress" and implored the sister to contact him. When the sister did not respond, Richards obtained S.S.'s mother's phone number and left her a voicemail that said he was trying to reach S.S. Once again, S.S. contacted West Des Moines Police, this time speaking with Officer Cody Jacobsen, and she reported these incidents. Officer Jacobsen observed that S.S. "was visibly upset, visibly scared at the repeat attempts [of Richards] to get ahold of her personal information."

Officer Jacobsen determined that probable cause existed to arrest Richards for harassment in the third degree, a simple misdemeanor in violation of Iowa Code section 708.7(4) (2019). Officer Jacobsen contacted the Polk County Attorney's Office, which approved the request for an arrest warrant. He then called Richards and informed him that a warrant would be issued for his arrest shortly. Soon after receiving this call, Richards went to the Office of the Iowa Attorney General, where he apparently reported that S.S. was involved in "trafficking."

Next, Richards went to the Ankeny Police Department and again reported that he believed S.S was the subject of human-trafficking activities. Ankeny Police

Officers Brock Muhlbauer and Nathan Friedrich spoke with Richards in a stationhouse interview room at Richards's request. Richards told these officers that he believed he actually met S.S. ten years before, in another state, and he believed S.S. was being "trafficked" by one of her supervisors. In the same interview, Richards admitted that West Des Moines Police told him to stop contacting S.S. and that he knew a warrant would soon be issued for his arrest.

The Ankeny officers contacted Officer Jacobsen in West Des Moines, who informed them that Richards had been harassing S.S. and West Des Moines had requested the warrant just hours before Richards showed up at the Ankeny Police Department. Officer Jacobsen asked Officer Muhlbauer to hold Richards in Ankeny so that West Des Moines police could travel across the county and arrest Richards. Officer Muhlbauer handcuffed Richards, ensured the cuffs properly fit, informed Richards he was being detained at request of the West Des Moines police, and placed Richards in his patrol car. When Officer Jacobsen arrived, he replaced the Ankeny handcuffs with his own, read Richards *Miranda* warnings, informed him that he was under arrest, and placed him in an Ankeny squad car for transport to the county jail. Richards did not report any pain and later testified that he was not injured during the arrest.

A no-contact order was issued the next day, and Richards was charged by complaint with harassment in the third degree. At trial, a jury found Richards not guilty.

Richards filed a pro se civil petition alleging false arrest, false imprisonment, and battery in the Story County District Court, venue for which was eventually transferred to Polk County. The named defendants were the individual officers

discussed above, the West Des Moines and Ankeny Police Departments, and the Cities of West Des Moines and Ankeny. The police defendants filed a first motion for summary judgment, which was denied. They subsequently filed a second motion for summary judgment, which Richards resisted and then responded to with his own cross-motion. The district court granted the police defendants' second motion and denied Richards's cross-motion as untimely. Richards appeals.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). Evidence "is viewed in the light most favorable to the nonmoving party," but "the nonmoving party may not rest upon the mere allegations of his pleading [and] must set forth specific facts showing the existence of a genuine issue for trial." *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005). "Speculation is not sufficient to generate a genuine issue of fact." *Id.* at 96.

"Summary judgment is not a dress rehearsal or practice run; 'it is the put up or shut up moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 808 (Iowa 2019) (citation omitted) (alteration in original).

## III. Discussion

We are tasked here with considering a long list of arguments made in Richards's pro se brief. The brief is unusual and does not cleanly organize the issues, so we analyze the issues in a slightly different order and using different headings. We also note there are many scattered passages in the briefing that

make confusing procedural or evidentiary challenges, few if any of which were preserved or are proper at the summary-judgment stage. We have considered all challenges made by Richards in this appeal, whether we acknowledge them expressly or not.

The three challenges we expressly consider are the intermingled tort claims related to false arrest and false imprisonment, the independent tort claim of battery, and the unpled federal constitutional claims. We affirm the judgment below on all of these claims to the extent they are preserved, though we differ with the district court's analysis in some material aspects.

### A. False Arrest and False Imprisonment

Several sections of Richards's pro se brief allege variations of his claim that the police defendants did not have probable cause to arrest him under Iowa Code chapter 804. We address these contentions in the aggregate, rather than assuming the role of an advocate to tease out any distinction between the repetitive claims. We also agree with the police defendants that this hodge-podge of claims is best understood as a challenge to whether the district court correctly granted summary judgment on Richards's intertwined false-arrest and false-imprisonment tort claims.

The resolution of this issue hinges on whether the police defendants had probable cause to arrest Richards; if they had probable cause, the arrest was lawful and the imprisonment was not false. *See Children v. Burton*, 331 N.W.2d 673, 678 (Iowa 1983). Although the term "probable cause" is used in both criminal–constitutional litigation and tort claims for damages, the standard in tort claims is "less demanding than the constitutional probable cause standard in criminal cases.

If the officer acts in good faith and with reasonable belief that a crime has been committed and the person arrested committed it, his actions are justified and liability does not attach." *Id.* at 679–80. The analysis is objective, rather than subjective, and is based on the officer's knowledge at the time an arrest is made. *Id.* at 680; *see Veatch v. City of Waverly*, 858 N.W.2d 1, 8 (Iowa 2015). Information known by one officer is presumed to be known by other officers, even if not actually communicated. *See Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 770 (Iowa 2002); *State v. Satern*, 516 N.W.2d 839, 841 (Iowa 1994). The probable-cause analysis is not limited to evidence that would be admissible at trial; hearsay and other traditionally excluded evidence are relevant and properly considered. *Children*, 331 N.W.2d at 679.

Iowa law allows warrantless arrests in six circumstances, three of which are relevant here:

1. For a public offense committed or attempted in the peace officer's presence.
2. Where a public offense has in fact been committed, and the peace officer has reasonable ground for believing that the person to be arrested has committed it.
3. Where the peace officer has reasonable ground for believing that an indictable public offense has been committed and has reasonable ground for believing that the person to be arrested has committed it.

Iowa Code § 804.7. A fourth circumstance applies when an arrest warrant has been issued, but it is undisputed the warrant had not yet issued in this case. *See id.* § 804.7(4).

We confine our analysis of these provisions to the claims urged by the parties below. The police defendants identified only two criminal offenses as the bases for an arrest: harassment under section 708.7 and false reports under

section 718.6. Because the police defendants did not rely on any other chapters of the Iowa Code, such as stalking in section 708.11, we refrain from opining on whether probable cause existed for any other offenses.

We first note the district court erred in relying on section 804.7(3), which only applies to "an indictable public offense," when the court analyzed application of the harassment statute. Based on the undisputed facts, the police believed Richards's actions constituted harassment in the third degree and did not rise to the level of first- or second-degree harassment.[1] *See* Iowa Code § 708.7. Harassment in the third degree is a simple misdemeanor—not an indictable misdemeanor. Iowa Code § 708.7(4)(a), (b); *see also id.* § 801.4(8) (defining "indictable offense" as "an offense other than a simple misdemeanor"). As a result, section 804.7(3) does not apply to a theory of harassment as the basis for arrest, and Richards's assertions in this vein are well-taken. But that does not end the analysis, given the briefing below and on appeal.

The police defendants do not concede error in the district court's analysis on this prong, though they carefully avoid relying on it in their appellate briefs. The police defendants instead more forcefully argue, as they did below, that the arrest was justified by sections 804.7(1) and 804.7(2) for harassment or sections 804.7(1) and 804.7(3) for making a false report to law enforcement. We find all of these

---

[1] At the time of Richards's actions, first-degree harassment required a threat to commit a forcible felony, revenge-pornography blackmail, or three or more prior convictions for harassment in the past ten years. Iowa Code § 708.7(2). Second-degree harassment required a threat to commit bodily injury or two prior convictions for harassment in the past ten years. *Id.* § 708.7(3).

alternatives were supported by the undisputed facts and provide an independent basis to affirm the judgment of the district court.

As to sections 804.7(1) and 804.7(2) and the crime of harassment, both apply to a "public offense" rather than an "indictable offense." A "public offense" is conduct "prohibited by statute and is punishable by fine or imprisonment," including simple misdemeanors. Iowa Code § 701.2; *see also id.* § 801.4(8). The magistrate's finding in the criminal case that there was probable cause Richards committed a public offense arguably has preclusive effect here, but we are mindful that "[t]he statutory standard for warrantless arrests under [chapter 804] is not identical to the federal constitutional standard," *Veatch*, 858 N.W.2d at 7–8, so we conduct an independent assessment. Proceeding to the merits, we find the undisputed facts support statutory probable cause for harassment in the third degree, as Richards communicated to others by telephone and via electronic communication without legitimate purpose and in a manner likely to cause annoyance or harm. *See* Iowa Code § 708.7(1)(a)(1), (4); *Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 475 (Iowa 2018) (recognizing harassment may be committed through a third party). At least some of the harassment was committed in the presence of peace officers, given Richards's apparently false statements to Officer Jacobsen connecting S.S. to human trafficking, and Officer Jacobsen reasonably and in good faith believed these statements were made with the intent to intimidate, annoy, or alarm S.S. *See Young v. City of Des Moines*, 262 N.W.2d 612, 619 (Iowa 1978) (analyzing the "in the peace officer's presence" language of section 804.7(1)), *overruled on other grounds by Parks v. City of Marshalltown*, 440 N.W.2d 377, 379 (Iowa 1989). This commission of a public offense in the

presence of at least one officer was enough to satisfy both sections 804.7(1) and 804.7(2).

Sections 804.7(1) and 804.7(3) also support the district court's ruling on probable cause with the underlying offense of false reports, in violation of Iowa Code section 718.6. This offense, unlike harassment in the third degree, is an indictable misdemeanor when the falsely reported crime is an indictable misdemeanor or felony. *See* Iowa Code § 718.6. The reported crime here was human trafficking, and all varieties of human trafficking offenses are felonies or aggravated misdemeanors under Iowa law. Iowa Code §§ 710A.1, 710A.2, 718.6. So all false reports of human trafficking rise to indictable misdemeanors, and the police defendants' reasonable good-faith belief that Richards made a false report of human trafficking (in their presence and otherwise) was sufficient to justify the arrest.

Last, Richards appears to advance on appeal some version of his claim that West Des Moines Officer Jacobsen was acting outside his authority when he drove to Ankeny and transported Richards to the county jail. On this point, we agree with the district court that Ankeny Officer Muhlbauer had an objective basis to arrest Richards and functionally did so,[2] with the eventual assistance of Officer Jacobsen. *See* Iowa Code § 804.17 ("Any peace officer making a legal arrest may orally summon as many persons as the officer reasonably finds necessary to aid the

---

[2] We acknowledge Officer Muhlbauer's subjective belief he was only detaining Richards until Officer Jacobsen arrived, but our analysis is objective, and we conclude Officer Muhlbauer effected a statutory arrest. *See* Iowa Code § 804.5 ("Arrest is the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody.").

officer in making the arrest."). Because Officer Muhlbauer was within his municipal jurisdiction, Richards's complaint on this point is unavailing. Even if we were to find the officers could not aid each other under section 804.17, we would conclude these officers could—at minimum—effect a citizen's arrest. *See* Iowa Code § 804.9(1); *see also State v. Hodges*, No.17-0712, 2018 WL 1433833, at *4 (Iowa Ct. App. Mar. 21, 2018) (relying on *State v. Snider*, 522 N.W.2d 815, 817 (Iowa 1994), and analyzing the thorny question of when a municipal police officer can make an extraterritorial arrest for violating state law).

Having found independent bases for affirmance, despite the district court's erroneous analysis of harassment under section 804.7(3), we affirm the grant of summary judgment on the false-arrest/false-imprisonment claim. *See DeVoss v. State*, 648 N.W.2d 56, 62 (Iowa 2002) (collecting cases that permit affirming the district court on substantive grounds urged but not decided).

### B. Battery

In a few different ways, Richards also contends that the police battered him by handcuffing him and searching him incident to arrest. To make out a prima facie case of battery, Richards had to prove (1) the police defendants did an act resulting in bodily contact causing physical injury and (2) the act resulted in bodily contact that a reasonable person would find insulting or offensive. *See* Iowa Model Civil Jury Instr. No. 1900.4 (citing Restatement (Second) of Torts, §§ 13, 18 (Am. L. Inst. 1965)). But even if Richards could meet that burden, "'Police officers are privileged to commit a battery pursuant to a lawful arrest' subject to the limitation on excessive force." *Lawyer v. City of Council Bluffs*, 240 F. Supp. 2d 941, 955 (S.D. Iowa 2002) (citing 6 Am. Jur. 2d *Assault and Battery* § 118 at 103).

Based on the undisputed facts, we agree with the district court that the police defendants are entitled to judgment as a matter of law, though we must disavow the district court's observation that handcuffing and searching a suspect are "de minimis"—these are in fact Fourth Amendment events of constitutional magnitude. *See Terry v. Ohio*, 392 U.S. 1, 16–20 (1968); *State v. Hunt*, 974 N.W.2d 493, 496–97 (Iowa 2022).

On the broader point, the district court correctly concluded that the police defendants' use of force was authorized by statute and the search was authorized by case law. Iowa Code section 804.8 provides, "A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest." Having concluded in the previous section that the arrest was lawful, we are left to decide whether the police defendants reasonably believed use of handcuffs was "necessary to effect the arrest" and preserve officer safety. Given Richards's admission that he did not complain of pain and reported no injuries, we have little trouble concluding the use of handcuffs was a reasonable use of force. *See State v. DeWitt*, 811 N.W.2d 460, 473 (Iowa 2012) ("[T]he officers' conduct in tackling [the defendant] and placing him in handcuffs was objectively reasonable."); 168 Am. Jur. 3d *Proof of Facts* 1, § 19 (June 2023 update) ("Officers commonly use handcuffs when making arrests so that the suspect cannot get away or harm the officers."); *see also People v. Smith*, 13 P.3d 300, 305 (Colo. 2000) (collecting cases that recognize it is reasonable to use handcuffs during police encounters, even without probable cause).

We come to a similar conclusion on the search incident to arrest, given controlling case law and that the search was of Richards's person rather than his vehicle or any private container. *See State v. Vance*, 790 N.W.2d 775, 786 (Iowa 2010) ("[T]he Supreme Court has long recognized the lawful custodial arrest of a person justifies the contemporaneous search of the person arrested and of the immediately surrounding area, meaning the area from which the person might gain possession of a weapon or destructible evidence."). *But see State v. Gaskins*, 866 N.W.2d 1, 13 (Iowa 2015) (placing some limitations on searches incident to arrest, as compared to federal law, based on article I, section 8 of the Iowa Constitution).

## C. Section 1983

Richards also urges on appeal that his federal constitutional rights were violated and he is owed relief under Title 42, section 1983 of the United States Code. But this cause of action was not pled in Richards's petition, which solely alleged the state-law torts of false imprisonment, false arrest, and battery. As a result, this claim is not properly before us and the analysis ends here. *See Stew-Mc Dev., Inc. v. Fischer*, 770 N.W.2d 839, 848 (Iowa 2009) ("[T]he issues decided by the district court should be limited to those directly or impliedly raised by the pleadings or litigated with the consent of the parties."); *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

## IV. Disposition

We affirm the grant of summary judgment, disavowing the district court's analysis of section 804.7(3) as it relates to harassment and the court's finding that

the use of handcuffs was "de minimis."  We reject all claims made by Richards on appeal and affirm the grant of summary judgment to the police defendants.  Costs are assessed to Richards.

**AFFIRMED.**